

FILED
DEC - 7 2016
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERCIA ) | |
| ) | Criminal No. 1:16-mj-559 |
| v. ) | |
| ) | The Hon. Ivan D. Davis |
| ROBERT MASON WILDES, ) | |
| ) | |
| Defendant. ) | |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Kendrah Peterson, being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed since 2006. I am currently assigned to Enforcement Group Forty-Four at the Washington Division Office, located in the District of Columbia.

2. While with the DEA, I have participated in the investigation of narcotics traffickers and possessors. Many of these investigations led to the arrest and conviction of narcotics dealers and money launderers. In the course of conducting these investigations, I have used several different kinds of investigative techniques, including: interviewing informants and cooperating sources; conducting physical surveillance; conducting short-term and long-term undercover operations, including reverse undercover operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification data; conducting court-authorized electronic surveillance; preparing and executing search warrants, which have led to substantial seizures of narcotics, firearms, contraband, and drug related assets; and, the analysis of financial documents and

records.

3. This affidavit is being submitted in support of a criminal complaint charging ROBERT MASON WILDES ("WILDES") with conspiracy to distribute five hundred (500) grams or more of mixture and substance containing a detectable amount of methamphetamine, its salts, isomers or salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

4. The facts and information contained in this affidavit are based upon my personal knowledge of the investigation and information obtained from other state and federal law enforcement officers. All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of reports, documents, and other physical evidence obtained during the course of this investigation.

5. This affidavit contains information necessary to support probable cause. The information contained in this affidavit is not intended to include each and every fact and matter observed by me or known to the government.

6. During the course of this investigation, law enforcement has used two confidential sources (hereafter referred to as "CS-1" and "CS-2"). For the purpose of this affidavit, the cooperating sources will be referred to in the masculine gender regardless of their true gender. The cooperating sources have provided law enforcement with information that has proven to be true and accurate in this and other drug investigations. CS-1, however, and as further detailed below, did take some of the controlled substances that he purchased, at the direction and supervision of law enforcement, from WILDES. I have no reason to doubt the veracity of the information provided by the cooperating sources. Further, the information provided by the

cooperating sources has been independently corroborated by law enforcement through physical surveillance and the review of both business and phone records. The cooperating sources worked with law enforcement in hopes of receiving a possible sentence reduction on drug trafficking charges that are pending in state courts in Virginia. Both cooperating sources have admitted to using crystal methamphetamine.

## PROBABLE CAUSE

A.   Background of the Investigation

7.   Beginning in or around late-2015, law enforcement received information that WILDES and other individuals were involved in the distribution of crystal methamphetamine in the Eastern District of Virginia and elsewhere. More specifically, law enforcement received information indicating that WILDES was receiving large quantities of crystal methamphetamine from various sources of supply in Georgia and California. WILDES was then further distributing this crystal methamphetamine.

B.   Law Enforcement Seizure of Approximately 93 grams of Crystal Methamphetamine from CS-1 on July 2, 2016

8.   On or about July 2, 2016, law enforcement conducted a traffic stop of a suspect, who was found to be in possession of approximately 93 grams of suspected crystal methamphetamine and other controlled substances, along with $7,924. This suspect agreed to cooperate with law enforcement (hereinafter referred to as "CS-1"). CS-1 stated that he received the seized methamphetamine from WILDES.

C.   Drug Related Messages between CS-1 and Robert Wildes

9.   In July of 2016, CS-1 consented to a search of his phone. A search of the phone revealed that CS-1 and WILDES were in a conspiracy to distribute methamphetamine. WILDES

3

and CS-1 communicated via a mobile application called "SIGNAL." At the time CS-1's phone was reviewed, time-stamp information was not available for older messages or other communications. CS-1 advised that the text messages detailed below occurred between June of 2016 and early July of 2016. The following messages were exchanged between CS-1 and WILDES in the SIGNAL application:

| FROM | MESSAGE |
|---|---|
| WILDES | Hey. I'm about to start heading back from Atlanta now. I didn't know if you wanted me to stop on my way back or if you were even ready for me yet |
| WILDES | This batch is the best to date. |
| CS-1 | I'm not quite ready for a big order but I could do a trade-in from what I got to new? Like 1 oz, or half oz? |
| CS-1 | Plus I have the rest of what I owe from the other night. |
| CS-1 | Either way be safe and drive careful. |

10. In the above table of messages, WILDES wrote "I'm about to start heading back from Atlanta now." Based on my training and experience, I know that Atlanta, Georgia, is a source city for methamphetamine. WILDES also wrote "I didn't know if you wanted me to stop on my way back or if you were even ready for me yet." Based on my training, experience, and conversations with CS-1, I believe WILDES wasn't sure if CS-1 needed more methamphetamine, and that WILDES stated he would meet up with CS-1 to deliver the methamphetamine on his way back to the Virginia area from Atlanta, Georgia. Additionally, WILDES wrote "This batch is the best to date." Based on my training and experience, I believe WILDES is referring to the quality of the methamphetamine that he purchased in Atlanta, Georgia.

D. <u>Historical Information Provided by CS-1</u>

11. CS-1 stated that he met WILDES in around the end of 2015. CS-1 further stated that WILDES could supply CS-1 with multiple ounce quantities of crystal methamphetamine. CS-1 believed that WILDES received the methamphetamine through the mail. CS-1 stated that on about three (3) occasions in 2016, he obtained approximately ½ pound (8 ounces) of crystal methamphetamine from WILDES. CS-1 stated that these transactions usually took place in and around Henrico County, Virginia, within the Eastern District of Virginia. According to CS-1, WILDES charged $6,000 for a ½ pound of methamphetamine. CS-1 also purchased gamma-Hydroxybutyric acid ("GHB") and ketamine from WILDES. CS-1 informed law enforcement that WILDES drives a blue pickup truck and that WILDES drove this truck to his meetings with CS-1.

E. <u>Controlled Purchase of Crystal Methamphetamine from Robert Wildes on September 6, 2016</u>

12. On or about September 6, 2016, at the direction and supervision of law enforcement, CS-1 arranged to purchase 6.5 ounces of crystal methamphetamine from WILDES for $5,000 at a location within the Eastern District of Virginia. CS-1 arranged this purchase by communicating with WILDES via text messages. Prior to, and following, the controlled purchase, CS-1 was searched for contraband with negative results. Law enforcement conducted surveillance of the arranged meeting location. During this surveillance, law enforcement observed WILDES drive to the meeting location in his blue pickup truck. CS-1 was then observed entering WILDES' blue pickup truck. WILDES then drove his vehicle to a local shopping center before returning CS-1 to his vehicle. According to CS-1, WILDES provided him with the methamphetamine in return for the $5,000 (pre-recorded evidence funds). This

controlled purchase was recorded and I can confirm the recording corroborates CS-1's statements.

13. Law enforcement conducted a preliminary field-test, which resulted in a positive response for methamphetamine.

F. <u>Suspicious Mailing Labels Recovered from Robert Wildes' Hotel Room</u>

14. On October 19, 2016, investigators observed WILDES' vehicle parked near the Mason & Rook Hotel in Washington, D.C. Based on a review of records obtained from the Mason & Rook Hotel, investigators have confirmed that WILDES frequents this hotel. On October 20, 2016, after WILDES checked out of his room, investigators obtained the trash from WILDES' room. Investigators recovered a FedEx receipt with two tracking numbers.

15. The following day, investigators obtained video footage from the FedEx office identified on the receipt. The video footage shows WILDES picking up two packages at the FedEx Office in Springfield, Virginia, within the Eastern District of Virginia. The package was shipped by an unidentified male in Atlanta, Georgia. Investigators could neither locate businesses nor persons identified with the shipping address. As stated above, based on my training and experience, I know that Atlanta, Georgia is a source city for methamphetamine.

G. <u>Controlled Purchase of Crystal Methamphetamine from Robert Wildes on October 28, 2016</u>

16. On October 28, 2016, at the direction and supervision of law enforcement, CS-1 arranged to purchase eight (8) ounces of crystal methamphetamine from WILDES for $6,000. WILDES directed CS-1 to meet him at WILDES' residence in Dunn Loring, Virginia (Fairfax County), which is located within the Eastern District of Virginia, to conduct the transaction. Prior to and following the controlled purchase, CS-1 was searched for contraband with negative

results.

17. Law enforcement conducted surveillance of the arranged meeting location. CS-1 was observed arriving at WILDES' residence. According to CS-1, WILDES reached into his blue pickup truck and retrieved a box containing eight (8) ounces of suspected methamphetamine and a bottle of GBL. CS-1 provided WILDES with the $6,000 (pre-recorded evidence funds), in exchange for the methamphetamine and GBL. This controlled purchase was recorded and I can confirm the recording corroborates CS-1's statements.

18. Law enforcement conducted a preliminary field-test which resulted in a positive response for methamphetamine.

19. On November 1, 2016, special agents reviewed video footage of CS-1 in his vehicle after the meeting with WILDES. A review of the video revealed CS-1 opened and removed the seal on the bottle of GBL that WILDES had given to CS-1. CS-1 obstructed the camera with his cell phone and moved the camera, so that law enforcement could not see what was happening. The video shows CS-1 pulling a smaller bottle from the rear of his vehicle to his person. Special agents can hear a liquid being poured, however, the video footage does not capture CS-1's actions because CS-1 moved the camera. Approximately six minutes after CS-1 is observed picking up the bottle of GBL, CS-1 is seen placing the bottle of GBL back into the passenger's seat. After reviewing this video, law enforcement only used CS-1 to contact WILDES via telephone.

H. <u>Text Messages Between Robert Wildes and CS-1 in November and December of 2016</u>

20. On November 9, 2016, CS-1 contacted law enforcement and advised that WILDES reached out to CS-1 via text message to "touch base."

7

21. On December 1, 2016, CS-1 contacted law enforcement and advised that WILDES told CS-1 via text message that he is able to provide CS-1 with approximately one pound of crystal methamphetamine.

I. Historical Information Provided by CS-2

22. In September of 2016, in Arlington County, Virginia, within the Eastern District of Virginia, law enforcement conducted a traffic stop of a subject, who was found to be in possession of a quantity of suspected crystal methamphetamine. This subject agreed to cooperate with law enforcement (hereafter referred as "CS-2"). CS-2 identified WILDES as one of his sources of supply for crystal methamphetamine.

23. CS-2 stated that he met WILDES in early 2016. Shortly after meeting WILDES, CS-2 began to purchase ½ ounce (14 grams) quantities of crystal methamphetamine from WILDES. He stated that he purchased a ½ ounce on approximately four to five occasions and then progressed to purchasing one (1) ounce quantities from WILDES. CS-2 purchased one (1) ounce quantities from WILDES on approximately ten (10) occasions, usually meeting WILDES in Tyson's Corner, Virginia, which is located within the Eastern District of Virginia.

J. Traffic Stop and Arrest of Robert Wildes and Search of Residence on December 6, 2016

24. On December 6, 2016, law enforcement conducted a traffic stop of WILDES for a traffic violation in Fairfax County, Virginia, within the Eastern District of Virginia. During the stop, a law enforcement K-9, trained and certified in the detection of controlled substances including methamphetamine, "alerted" for the presence of controlled substance(s) in WILDES vehicle. Law enforcement then conducted a search of the vehicle and recovered approximately five (5) pounds of suspected crystal methamphetamine and more than $10,000. Law

enforcement conducted a preliminary field-test of the suspected methamphetamine, which resulted in a positive response for methamphetamine.

25. On December 6, 2016, law enforcement obtained a search warrant from the Honorable Ivan D. Davis, United States Magistrate Judge for the Eastern District of Virginia, for WILDES' residence in Dunn Loring, Virginia. During the search, law enforcement, seized an additional pound of suspected crystal methamphetamine. Law enforcement also identified a money counter, hundreds of small plastic packaging materials, numerous small and large empty glass bottles (similar to the bottle containing GBL that WILDES provided to CS-1 in October), paraphernalia, glass smoking devices, fake identification cards, false bottom containers, digital scales, and bank deposit slips identifying cash deposits. Law enforcement conducted a preliminary field-test of the suspected methamphetamine, which resulted in a positive response for methamphetamine.

## CONCLUSION

26. Based upon the foregoing, I believe probable cause exists that from in and around June 2016 to on or about December 6, 2016 in Fairfax County, Virginia, within the Eastern District of Virginia, and elsewhere, ROBERT MASON WILDES, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with others, both known and unknown, to unlawfully, knowingly, and intentionally distribute five hundred (500) grams or more of mixture and substance containing a detectable amount of methamphetamine, its salts,

isomers or salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

_____
Kendrah Peterson
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 7th day of December 2016.

_____ /s/
Ivan D. Davis
United States Magistrate Judge